IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| ALEXANDRA BYNUM, | * |
| Plaintiff, | *  Case No.: GJH-16-2067 |
| | * |
| v. | * |
| | * |
| LAURA L. MARTIN, | * |
| STATE'S ATTORNEY | * |
| FOR CALVERT COUNTY, MARYLAND | |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This is a disparate treatment case brought by Plaintiff Alexandra Bynum against her former employer, Laura L. Martin, in her official capacity as State's Attorney for Calvert County, for purported violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq* and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20-601 *et seq*. Now pending before the Court are Defendant's Motion to Dismiss, ECF No. 16, and Plaintiff's Motion to Defer Ruling on Defendant's Motion to Dismiss, or alternatively, to convert the Motion to Dismiss into a Motion for Summary Judgment and permit the parties to engage in discovery, ECF No. 21. A hearing was held on December 5, 2016. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Defendant's Motion to Dismiss is granted and Plaintiff's Motion to Defer Ruling on Defendant's Motion to Dismiss is denied.

## I.    BACKGROUND[1]

Alexandra Bynum, a white female married to an African American man, began her

employment with the Office of the State's Attorney for Calvert County in June 2007. ECF No.

13 ¶¶ 3, 10. Ms. Bynum was employed as an Assistant State's Attorney ("ASA") and describes

her role as that of a line prosecutor who did not engage in policymaking or form part of Ms.

Martin's personal staff. *Id.* ¶¶ 9-10. Ms. Martin has served as the State's Attorney for Calvert

County since 2006. *Id.* ¶ 4. In that role, Ms. Martin maintained, directed and operated the Office

of the State's Attorney. *Id.*

On August 8, 2014, Plaintiff was advised that her husband, Terris L. Bynum, had sexual

assault charges filed against him by a white woman. *Id.* ¶ 10. On August 13, 2014, Plaintiff was

told by State's Attorney Laura Martin and Deputy State's Attorney Fran Longwell to resign or be

discharged. *Id.* ¶ 11. At all times prior to that conversation, Plaintiff was "at least a fully

successful performer." *Id.* ¶ 9. Mr. Bynum was never convicted of any sexual assault charges. [2]

*Id.* ¶ 10.

Plaintiff alleges that, under similar circumstances, other employees whose family

members are not African American have not been asked to resign or be discharged. *Id.* ¶ 12.

Specifically, Plaintiff points to two other Assistant State's Attorneys, Lisa Ridge and Tammy

Lafferty, who were not asked to resign, despite their husband or close relative's interactions with

the criminal justice system during Defendant's tenure. *Id.* ¶ 12. [3]  According to Plaintiff, Lisa

---

[1] For the purposes of deciding this Motion to Dismiss, all facts are taken from the Amended Complaint and assumed
to be true, unless specifically noted otherwise.
[2] The Complaint notes that after an investigation by a special prosecutor, Mr. Bynum was exonerated of the sexual
assault charges. *Id.* ¶ 10. It is unclear when the investigation concluded.
[3] While noting that their husbands are not African-Americans, the Amended Complaint does not specify the race of
Ms. Ridge or Ms. Lafferty or whether their marriages are interracial. Although Plaintiff's Opposition to Defendant's
Motion to Dismiss further specified that neither Ms. Ridge or Ms. Lafferty were in an interracial relationship,
plaintiff "cannot, through the use of motion briefs, amend the complaint." *Zachair Ltd. v. Driggs*, 965 F. Supp. 741,

2

Ridge's husband, Michael Charles Ridge, had multiple traffic citations dismissed or entered as "not guilty," and allegations were made in court, but never investigated, that Mr. Ridge was a known illegal drug supplier. *Id.* ¶ 13.  Ms. Bynum also alleges that Defendant had knowledge of the fact that criminal battery charges against Mr. Ridge were placed on the stet docket in 1992. *Id.* Plaintiff also alleges that Lisa Ridge's brother, Jeffrey Alan Mills, had several charges for drug-related felony offenses during Defendant's tenure as State's Attorney. *Id.* ¶ 14.[4] Mr. Mills pled guilty to "possession other than marijuana" in 2008; was convicted of criminal offenses in a neighboring county in 2010; and in 2011, was convicted of fraudulently obtaining controlled dangerous substances. *Id.* ¶ 14. Similarly, in 2009, Tammy Lafferty's husband, Gerald Lafferty, was convicted of driving under the influence. *Id.* ¶ 16.  Plaintiff also notes that Nora Bowen, a victim witness advocate, was not asked to resign even though her son-in-law was prosecuted for domestic violence. *Id.* ¶ 18.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is

---

748 n. 4 (D.Md.1997); see also *Johnson v. SecTek. Inc.*, No. CIV.A. ELH-13-03798, 2014 WL 1464378, at *2 (D. Md. Apr. 14, 2014).

[4] At the hearing, counsel for Plaintiff proffered that Ms. Ridge was a senior drug prosecutor at the time and stated that Plaintiff would amend her complaint to allege that fact if given the opportunity.

entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a *prima facie* case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.*, No. 09-2453, 2010 WL 3369169, at *3 (D. Md. Aug.23, 2010 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a *prima facie* case even though she might uncover direct evidence during discovery." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 511-12). If this were the case, a plaintiff claiming employment discrimination would have "'to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512).

The Fourth Circuit "has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)). Thus, while a plaintiff pleading a discrimination claim does not need to establish a *prima facie* case under *McDonnell Douglas* to

4

survive a motion to dismiss, *Swierkiewicz*, 534 U.S. at 510, she must still plead facts sufficient to state each element of the asserted claim. *See Bass*, 324 F.3d at 765 ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.") (emphasis in original).

## III.   DISCUSSION

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). Similarly, FEPA, the Maryland state analogue to Title VII, makes it illegal to "discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of: (i) the individual's race..." Md. Code Ann., State Gov't § 20-606(a)(1)(i). Defendant raises two reasons why Plaintiff's claims under these statutes should be dismissed: (1) that as an ASA, Plaintiff was a policymaker and, thus, not an employee covered by Title VII; and (2) even if Plaintiff is covered by Title VII, Plaintiff has failed to sufficiently allege the elements of her claim.

### A. The Policymaker Exception under Title VII/FEPA

In its definition of the term "employee," Title VII creates an exception from its protections for individuals who are "elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e(f). Similarly, FEPA does not apply to "…(ii) an individual chosen by an elected officer to be on the

5

officer's personal staff; (iii) an appointee on the policy making level; or (iv) an immediate adviser with respect to the exercise of the constitutional or legal powers of an elected office." Md. Code Ann., State Gov't § 20-601(c)(2). Defendant contends that Ms. Bynum cannot bring a claim under Title VII or FEPA because, as an ASA, she was an "appointee on the policy making level," and thus falls outside the protection of those statutes. ECF No. 16-1 at 5-6. By contrast, Ms. Bynum argues that as a line prosecutor, she did not serve in a policymaking position. ECF No. 20 at 11. Much of the case law relevant to this determination has grown out of cases analyzing a similar policymaker exception to the First Amendment's prohibition against patronage dismissals.

"The First Amendment protection against patronage dismissals…prohibits government employers, including elected officials, from firing 'non-policymaking, non-confidential government employees . . .upon the sole ground of [their] political beliefs.'" *Borzilleri v. Mosby*, Civ. No. JFM-15-3760, 2016 WL 3057990 at *3 (D. Md. May 31, 2016) (quoting *Elrod v. Burns*, 427 U.S. 347, 375 (Stewart, J concurring)). Similar to the exception in Title VII, this prohibition against patronage dismissals, explicitly, does not apply to persons "occupying policymaking positions." *Bland v. Roberts*, 730 F.3d 368, 374 (4th Cir. 2013), as amended (Sept. 23, 2013). To determine whether an employee occupies a policymaking position, in the context of a patronage dismissal, courts consider whether "there is a rational connection between shared ideology and job performance." *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990). Adopting a test issued by the First Circuit, the Fourth Circuit in *Stott* considered whether "the position involve[d] government decisionmaking on issues where there is room for political disagreement on goals or their implementation . . . [and] whether [the position] resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is

such that party affiliation is an equally appropriate requirement." *Stott,* 916 F.2d at 142 (quoting *Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241-42 (1st Cir. 1986)). Following this body of law, the court in *Borzilleri* held that the position of an ASA was a policymaking position because it was "a position for which political affiliation was an appropriate requirement." *Borzilleri,* 2016 WL 3057990 at *5. Thus, the newly elected State's Attorney was determined to be within her rights to terminate an ASA who had supported her opponent "to ensure decisive and faithful implementation of her policies." *Id.* Defendant urges this Court to follow the ruling in *Borzilleri* in the context of Plaintiff's Title VII and FEPA claims.

The Fourth Circuit has yet to opine on whether the policy-maker exception in Title VII should be interpreted in the same manner as the policy-maker exception to the First Amendment prohibition against patronage dismissals. Other Circuits have addressed the issue with differing results. *Compare Americanos v. Carter,* 74 F.3d 138, 144 (7th Cir. 1996) ("the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII]")) (internal citation omitted) (alteration in original) *with Butler v. New York State Department of Law,* 211 F.3d 739, 746-47 (2d. Cir. 2000) ("We consider patronage dismissals to be an appropriate restraint on First Amendment rights when there is a connection between shared ideology and job performance . . . Our Title VII analysis, by contrast, draws on the language of the statute and congressional intent.").

While Defendant relies on *Borzilleri,* Plaintiff directs the Court's attention to *Reardon v. Herring,* No. 3:16-CV-34, 2016 WL 3181138 (E.D. Va. June 3, 2016). There, the court addressed whether a Virginia Assistant Attorney General ("AAG") could allege a violation of the Equal Pay Act ("EPA"). The defendant argued that the plaintiff was exempt from the EPA because she was "appointed by [an elected] officeholder to serve on a policymaking level." *Id.* at

*4. The court looked to the legislative history and case law interpreting Title VII, whose language regarding the policymaking exemption was identical to the determinative language under the EPA.[5]

Looking first at the legislative history, the court concluded that "[it] could not be clearer: Congress intended that the exception be very narrowly construed, and that the exception should apply only to officials 'at the highest levels' of their respective departments." *Id.* at *6.[6] Noting that there was a circuit spilt, the court examined the different approaches taken by the Seventh, Second, and Eighth Circuits to determine whether or not an individual serves "on the policymaking level," *Id.* at *7-*8, ultimately adopting the approach taken by the Eighth Circuit in *Gregory v. Ashcroft,* 898 F.2d 598 (8th Cir.1990). The Eighth Circuit's approach found that "the 'policymaking level' inquiry turns on the extent to which the plaintiff's position is 'entrusted with extensive decision making authority and discretionary power[.]'" *Id.* at *7 (quoting *Gregory v. Ashcroft,* 898 F.2d 598, 603 (8th Cir.1990), *aff'd,* 501 U.S. 452, (1991))( holding that judges are exempt from coverage of the ADEA because they are appointees on the policymaking level). That determination is made by looking at "(1) whether the [appointee] has discretionary, rather than solely administrative powers, (2) whether the [appointee] serves at the pleasure of the appointing authority, and (3) whether the [appointee] formulates policy." *Reardon,* 2016 WL 3181138, at *8 (quoting non-exhaustive list of factors referenced in *Gregory,* 898 F.2d at 604).

---

[5] "To bring a claim under the EPA, a plaintiff must be an "employee" as that term is defined by the Fair Labor Standards Act ("FLSA")." *Reardon v. Herring,* No. 3:16-CV-34, 2016 WL 3181138, at *4 (E.D. Va. June 3, 2016).
[6] Specifically, the House-Senate Conference Committee, which developed the final language found in Title VII, stated that the amendment exempted only "appointees of [elected] officials on the highest policymaking levels such as cabinet members or other immediate advisors of such elected officials . . . This exemption is intended to be construed very narrowly and is in no way intended to establish an overall narrowing of the expanded coverage of State and local governmental employees as set forth in section 701(a) and (b) above." *Reardon,* 2016 WL 3181138, at *6 (emphasis and alterations in original).

8

Applying the Eighth Circuit test to the duties of an AAG, the court in *Reardon* found that the "tasks of investigating crimes, prosecuting cases, advising administrative agencies on legal issues, answering questions from citizens and law enforcement agencies, reviewing pending legislation, making recommendations to the Attorney General, and drafting opinions do not per force plead that an AAG . . . has 'extensive decisionmaking authority.'" *Id.* at *13 (emphasis in original). The court further concluded that "it is reasonable to infer that Reardon's position, though somewhat expansively described in the Complaint, is that of a line attorney with little, if any, discretionary powers involving the formulation or implementation of policy." *Id.*[7]

Notably, here, the Plaintiff has alleged that she is a "line prosecutor." Without further description, there is no basis to conclude that Plaintiff's position involved more than that described by the court in *Reardon*. Indeed, as commonly understood, an individual line prosecutor's role would likely be less expansive than that which was described in the complaint in *Reardon*.[8] Thus *Reardon* is instructive and, additionally, this Court agrees with its reasoning.

Although the language of the policymaker exception to the prohibition of patronage dismissals and the language of the exception in Title VII are similar, the context and purposes are not. In the context of patronage dismissals, the exception serves "the important government goal of assuring the implementation of policies of [a] new administration, policies presumably sanctioned by the electorate." *Bland,* 730 F.3d at 374-75 (internal citation omitted). Indeed, "elected officials, in working to achieve their policy goals, are likely to prefer individuals with similar political and ideological outlooks." *Reardon,* 2016 WL 3181138 at*10 (internal citation

---

[7] The court in *Reardon* ultimately determined that because the allegations in the complaint lead to an inference that a "complex hierarchy exists within the OAG," that even if the plaintiff herself did not formulate policy, it was possible that powers inherent in her position might satisfy the Eighth Circuit standard and, thus, allowed discovery on the issue. *Id.* at *13. No such indication of a complex hierarchy has been made here.

[8] If this case were to proceed into discovery, this issue could certainly be revisited at the summary judgment stage if discovery revealed that Plaintiff's position did involve the formulation of policy.

omitted). "By contrast, the legislative history of the amendment that added the policymaking

exception to Title VII . . . makes abundantly clear that Congress intended the policymaking level

exception to be very narrowly construed." *Id.* at *11. Such a distinction between patronage

dismissals and Title VII is sensible. While there may exist a logical connection between the need

for an elected official to have employees committed to the implementation of an elected

official's policy and the ability to terminate employees who express a contrary view; there is no

such logic that would permit elected officials to subject employees to conduct that violates Title

VII without providing those employees recourse to its protections. The wording and legislative

history of Title VII makes it clear that was not Congress' intent for individuals not in the <u>highest</u>

policymaking levels.

Thus, this case is distinguishable from *Borzilleri*, which focused solely on an alleged

patronage dismissal and not what this Court concludes is a narrower policymaker exception in

Title VII. Here, as in *Reardon*, while the responsibilities inherent in the position of an ASA

serving as a line prosecutor do include some use of discretion, with no indication of supervisory

authority or the ability to make policy for other members of the office, "that is not the sort of

decision-making power or discretion that is envisioned by the 'employee' exception" in Title

VII. *Reardon*, 2016 WL 3181138, at *13. Therefore, the Court finds that Plaintiff qualifies as an

employee, rather than an appointee on a policy-making level, under Title VII and FEPA.

### B. Disparate Treatment

Nonetheless, the Court will grant Defendant's Motion to Dismiss because Plaintiff fails

to plead facts sufficient to state the second and fourth elements of her asserted disparate

treatment claim. Absent direct evidence, in order to state a *prima facie* claim of discrimination

under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2)

10

satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Discriminatory discharge based on participation in an interracial relationship is a cognizable claim of discrimination. *Collin v. Rectors & Visitors of Univ. of Virginia,* No. 96-1078; 1998 U.S. App. Lexis 21267, at *4 (4th Cir. 1998) ("it is generally accepted that the spouses of members of protected parties may be able to make out a prima facie case of discriminatory discharge") (per curiam); *see also Autrey v. Maryland,* Civ. No. GLR-14-3064, 2016 WL 362502, at *3 (D. Md. Jan. 29, 2016).

In regards to the second element, satisfactory job performance, Plaintiff merely alleges that "at all times prior to August 13, 2014, Plaintiff was at least a fully successful performer." ECF No. 13 ¶ 9. Even under the more liberal pleading standards of *Twombly,* 550 U.S. 544 (2007) and *Iqbal,* 556 U.S. 662 (2009), a conclusory statement of this kind is not sufficient to state a claim for disparate treatment. *See Kikwebati v. Strayer Univ. Corp.,* No. 2:14CV203, 2014 WL 7692396, at *8 (E.D. Va. Oct. 21, 2014) (Plaintiff's references to his 'record of success' and 'superior performance' would have been insufficient without detailed factual information regarding performance); *see also Mason v. Montgomery Cty.,* No. PWG-13-1077, 2015 WL 3891808, at *5 (D. Md. June 23, 2015) (holding that Plaintiff failed to allege sufficient facts to show that "he was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action.").

Turning to the fourth element, Plaintiff has failed to show that she was subject to different treatment from similarly situated employees outside the protected class. Although courts do not always require comparator evidence, a plaintiff, like Ms. Bynum, who bases her allegations entirely upon a comparison to other employees "must demonstrate that the

11

comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.*, 946 F.Supp.2d 432, 442 (D. Md. 2013) *aff'd,* 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision making personnel . . . .") *aff'd,* 553 U.S. 442 (2008).

Here, Ms. Bynum identifies a number of potential comparators but each has different or mitigating circumstances distinguishing their situations from Ms. Bynum's. Plaintiff identifies Lisa Ridge and Tammy Lafferty who, like Plaintiff, served as Assistant State's Attorneys. Regarding Ms. Ridge, Plaintiff alleges (1) that her husband had "multiple traffic citations", there were "[a]llegations made in court that Mr. Ridge was a known drug supplier" and criminal battery charges were placed on the "stet" docket in 1992 and (2) Ms. Ridge's brother was changed with drug-related felony offenses. ECF No. 13 ¶¶ 13-14. None of these bare any similarity to the arrest of Ms. Bynum's husband for sexual assault. First, multiple traffic citations are, by any reasonable measure, a much less serious offense than sexual assault; second, "allegations" are not the equivalent of an arrest; and, third, the alleged placement on the stet docket of battery charges took place prior to Ms. Martin's tenure as State's Attorney. Regarding allegations involving Ms. Ridge's brother, the relationship between husband and wife and a brother-sister relationship, particularly in a case where the core allegation is based on alleged

discrimination for being in an interracial marriage, are clearly too distinguishable to make allegations involving Ms. Ridge's brother relevant. Similarly, the fact that Ms. Lafferty's husband was convicted of driving under the influence, *id.* ¶ 16, is not similar enough to a sexual assault arrest to make Ms. Lafferty a useful comparator.

Finally, Plaintiff points to Nora Bowen but this comparator is also not similarly situated. As an initial matter, Ms. Bowen was a Victim Witness Advocate and not an Assistant State's Attorney like Plaintiff. Second, as with Ms. Ridge's brother, the prosecution of Ms. Bowen's son-in-law for domestic violence is not a useful comparison to an arrest of Ms. Bynum's husband in a case alleging discrimination based on interracial marriage. *Id.*¶ 16.

Accordingly, the Court will dismiss Ms. Bynum's disparate treatment claim with prejudice.[9] Plaintiff also raises an identical state law claim under FEPA, which other judges in this district have held to be interpreted consistently with Title VII. *See Finkle v. Howard Cty., Md.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) ("FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII"). Thus, for the same reasons that Ms. Bynum's Title VII claim fails, her state law claim regarding the same conduct also fails.

---

[9]At the motion's hearing, the Court asked Plaintiff's counsel to proffer facts that would be added to a Second Amended Complaint. In posing the question, the Court also noted that Plaintiff had previously amended her Complaint in response to Defendant's original Motion to Dismiss. Counsel responded by noting that Plaintiff would add that Ms. Ridge was a senior drug prosecutor when her brother was alleged to have committed drug offenses and that all of the listed comparators were supervised by the same Deputy State's Attorney. Neither fact would change the outcome as the alleged comparators would still be too distinguishable to serve as comparators for the reasons discussed. "[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support his claim." *Madden v. Edward S. Cohn*, LLC, No. PWG-14-395, 2014 WL 7188823, at *2 (D. Md. Dec. 16, 2014) (citation omitted). Plaintiff additionally makes a request for discovery prior to the Court's decision on this motion. But a Plaintiff cannot make conclusory or otherwise insufficient allegations and still be given the keys to the doors of discovery in hopes of uncovering new or stronger allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("[Notice pleading] marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") Thus, Plaintiff's Motion to Defer Ruling is denied and the dismissal is with prejudice.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendant's Motion to Dismiss, ECF No. 16, and deny Plaintiff's Motion to Defer Ruling on Defendant's Motion to Dismiss, or alternatively, to convert the Motion to Dismiss into a Motion for Summary Judgment and permit the parties to engage in discovery, ECF No. 21.  A separate order follows.

Dated: December 27 2016

GEORGE J. HAZEL
United States District Judge